## Skiba *v.* Nick Calvitti Coal Company (et al., Appellant).

Argued October 11, 1943. Before KELLER, P. J.,

BALDRIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Frank L. Pinola,* with him *Nathan Hyman,* for appellant.

*W. A. Skinner,* with him *Ralph P. Needle* and *Harry Needle,* for appellee.

OPINION BY KENWORTHEY, J., December 9, 1943:

In this compensation case, the referee made the following finding:

"8. We find as a fact that the decedent suffered accidental injuries which resulted in his death as a result of a fall of roof which was caused by the removal of a mine prop by the decedent with a bar. We further find that the act of the decedent in removing the prop with the bar was in violation of Article 12, Rule 55 of the Anthracite Mining Laws of Pennsylvania [Act of June 2, 1891 P. L. 176, 52 PS §294] which reads as follows: 'No person or persons working in any coal mine or colliery shall cut any props or timbers while the same are in position to support the roof or sides. When it becomes necessary to remove any of the said props or timbers for the purpose of mining coal that may be supported by the same, to dislodge any of the said props or timbers, it must be done by blasting.'"

The referee accordingly dismissed the petition. The

board affirmed the findings and order. The court reversed and directed that judgment be entered for claimant.

When, on the morning of the accident, decedent and his son entered the mine chamber to begin work, they found that a shot fired the previous evening had partially dislodged a prop; it was slanting at an angle of about 40 degrees. Decedent took a bar or drill and commenced "wedging the prop out." The son said: "As he wedged it, it slid down a few inches." The son warned decedent that "if he wasn't careful the both of us would be killed," and left to meet a car which was coming in the gangway.

When the son walked away, decedent was still holding the bar or drill. When he reached a point a little more than 20 feet away, he heard the fall of the roof. He ran back, to find decedent covered with rock. The prop was lying by his side. Decedent was extricated and carried to the office, where the son asked him, "why [he] move[d] that prop," whereupon decedent told him to "keep still about the prop and [not to] mention it to anybody."

We think the evidence was sufficient to support the findings of the board and that the order of the court below setting them aside must be reversed.

The court below said, "We do not believe that the evidence measures up to the standard required to support a finding of a criminal violation." The burden of proof was on the employer. Act of June 21, 1939, P. L. 520, 77 PS §431; *Parkins v. Hillman Coal & Coke Co.*, 114 Pa. Superior Ct. 358, 174 A. 784. And the rule seems to be that in order to sustain the burden there must be a clear preponderance of the evidence *approximating* that required in criminal cases. *Marinho v. Glen Alden Coal Co.*, 115 Pa. Superior Ct. 279, 282, 175 A. 715; *Floyd v. Paulton Coal Mining Co.*, 94 Pa. Superior Ct. 1; *Bucci v. Lincoln Coal Co.*, 140 Pa. Superior Ct. 538, 542, 14 A. (2d) 359. But it is not necessary to prove

the violation beyond a reasonable doubt (*Floyd v. Paulton Coal Mining Co.*, supra); the strict measure of proof demanded in a criminal case is not required (*Labuck v. Mill Creek Coal Co.*, 292 Pa. 284, 287, 141 A. 35). The prior cases are referred to and the matter discussed at some length by President Judge KELLER in *Gima v. The Hudson Coal Co.*, 106 Pa. Superior Ct. 288, 293, 161 A. 903.

The fact that the prop required the use of a bar or drill to move it raises the clear inference that, although in a slanting position, it was nevertheless in position to and was, in fact, lending support to the roof. The lower court felt there could be no violation of the Rule unless decedent entirely removed the prop—merely moving and loosening it was not enough. But this construction is too technical. The Rule should be reasonably construed. Decedent deliberately moved the prop so that its function of supporting the roof was destroyed. Whether his act was abortive or whether he completed the removal after his son left, it was, in our opinion, a violation of the law. And although it was not specifically shown how much time elapsed between decedent's act and the fall, the testimony of the son indicates it was almost immediate, a circumstance which would support a finding the act was the cause of the fall. See *Waselinko v. Volpe Coal Co.*, 152 Pa. Superior Ct. 156, 31 A. (2d) 444.

The circumstantial evidence was as strong as the evidence in the following cases, in which the court sustained the board's finding that the accident resulted from a violation of law. *Macenka v. Lehigh Coal & Navigation Co.*, 104 Pa. Superior Ct. 591, 159 A. 197; *Mizzer v. Phila. & Reading Coal & Iron Co.*, 289 Pa. 73, 137 A. 126; compare *Krischunas v. Phila. & Reading Coal & Iron Co.*, 296 Pa. 216, 145 A. 905; *Price v. Glen Alden Coal Co.*, 100 Pa. Superior Ct. 260; *Floyd v. Paulton Coal Mining Co.*, supra.

*Serafini v. West End Coal Co.*, 131 Pa. Superior Ct.

476, 200 A. 245, is distinguishable. We there merely pointed out that previous violations and intentions alone are not sufficient to sustain a finding of violation on a subsequent occasion.

The order is reversed and that of the Workmen's Compensation Board, affirming the disallowance of compensation by the referee, is reinstated and affirmed.